Matthew Joshua, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 12, 1980, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*Andrew F. Erba,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE ROGERS, January 16, 1981:

Matthew Joshua appeals a decision of the Unemployment Compensation Board of Review (Board) denying him benefits on the ground that his discharge by his employer, Superior Investigative Services, was for willful misconduct.[1]

While employed by Superior, Joshua was assigned as a guard to commercial establishments, including fast food restaurants and a theater. He was instructed personally to quell minor breaches of order or decorum and in case of a major disturbance to call Superior and to have the place to which he was assigned call the local police.

The Board found that in the month preceding his discharge Joshua was reproved by a supervisor for drinking and sleeping while assigned to guard a theater, that he twice reported to assigned locations without uniform and equipment as required by employer rule, and that two complaints concerning his failure to attempt to put down disturbances were made to Superior by managers of fast food restaurants to which he was assigned. On this appeal Joshua renews an argument rejected below that the competent evidence in the record did not establish misconduct. The record is not a strong one but it is,

---

[1] Section 402(e) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e) provides that "[a] employee shall be ineligible for compensation for any week—. . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . .".

in our view, sufficient to support the findings and the decision.

Joshua and an employer representative testified at two referee's hearings, the second having been granted at his request because he obtained counsel after the first. Joshua's own testimony established that he was drinking and may have been sleeping while on the theater job. His testimony also sufficiently showed that he was not properly accoutered while at the fast food restaurants. Following are questions put to him by the employer's representative and his answers:

Q. What about the time that you were drinking at the movie theater and I had to send Mr. Greenberg down to get you out of there?

A. Well really, there was no problem there at the theater. There was no problem where you needed, you know.

Q. Oh, you deny that you weren't drinking that day. Is that what you are telling me?

A. Well, if they say I was drinking, I was drinking. I had one glass of beer if that's what you want to call it.

. . .

Q. When was the last warning?

A. The last warning before he was terminated was on 12/28. I had sent Mr. Greenberg down there. I got a call from the theater that you were upstairs sound asleep and under the influence of alcohol.[2]

A. Excuse me sir. The theater had, was loaded with, because I took a complete, you

---

[2] This was spoken by the employer's representative and is obviously hearsay as to the claimant's sleeping and drinking.

had to keep on a complete circle on that theater walking. I seen that there were plenty of policemen up there, police persons about.

A. The policemen are not our guards. You are our guard.

A. Yeah I know. I know. But there were enough policemen, Philadelphia policemen that if anything had taken place well, the situation would have been well in hand.

. . .

Q. When you were working at the Mac-Donald's store up on Torresdale Avenue you said that you didn't have a lethal weapon. What happened to your weapon?

A. I didn't bring it with me that night and I didn't have a night stick, I had a night stick but I didn't have a slap stick which I had purchased since, a night stick and a slap stick.

Q. Well so then in other words, you are telling me that while you were on duty that night you weren't in complete uniform?

A. I wasn't equipped, no. I didn't have any lethal weapon on me.

Q. Okay, so you didn't only do your job you also weren't in full uniform at the time?

A. I wasn't in . . . oh, right.

Q. You wern't in full uniform?

A. Right. Correct. Correct. Correct.

Q. And that is a company policy, you know that.

A. Correct. Correct. Correct. You are right. I wasn't in full uniform. You are right.

. . .

Q. Every job that you ever went on you always went in full uniform you always carried

your weapon. Yet on these two jobs you didn't carry your weapon.

A. Right.

Finally, we reject Joshua's contention that the Board's finding that his discharge was predicated, in part, on his uniform infraction was without record support. When asked by his lawyer, "[a]lright, now Mr. Joshua when you were terminated, were you informed that the reason, part of the reason for your termination had to do with not being in a full uniform?" he answered yes.

Accordingly, we enter the following:

ORDER

AND Now, this 16th day of January, 1981, the order of the Unemployment Compensation Board of Review is hereby affirmed.